IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-01109-LTB

SHARON L. BAROS,

    Plaintiff,

v.

MATRIX LOGISTICS, INC., and
ADVANTAGE LOGISTICS USA WEST, LLC,

    Defendants.
_____

**ORDER**
_____

This employment case is before me on Defendant, Advantage Logistics USA West, LLC's ("Defendant"), Motion for Summary Judgment and accompanying Brief [**Docket ## 35, 36**], Plaintiff, Sharon L. Baros's, Response [**Docket # 39**], and Defendant's Reply [**Docket # 45**]; as well as Plaintiff's Motion to Strike the Affidavits of Doctors Finn and Bergland Submitted in Defendant's Motion for Summary Judgment [**Docket # 46**], Defendant's Response [**Docket # 53**], and Plaintiff's Reply [**Docket # 54**]. Oral argument would not materially assist the determination of these motions. After consideration of the motions, the papers, and the case file, and for the reasons stated below, I GRANT in part and DENY in part Defendant's Motion for Summary Judgment [**Docket # 35**]; and I DENY Plaintiff's Motion to Strike Affidavits [**Docket # 46**].

**I. BACKGROUND**

The relevant alleged facts are as follows. Plaintiff began working for Matrix Logistics—a grocery distribution company that operated a warehouse in Fountain, Colorado—in

March 2000. Defendant Advantage Logistics USA West, LLC, took over operation of the distribution center in October 2004. Matrix Logistics was dismissed from this case on November 5, 2007 [**Docket # 22**]. At all times relevant to this action, Plaintiff's employment was subject to the terms of a collective bargaining agreement.

Plaintiff was employed by Matrix Logistics as a Case Picker and Unit Picker. Both positions required Plaintiff to pull grocery items from warehouse shelves for redelivery to specified grocery stores. Case Pickers used a pallet rider to pull entire cases, while Unit Pickers walked with a cart and pulled individual units from shelves, to be placed in a container with other individual items. When the container reached capacity, it was to be sealed and placed on a conveyor belt.

In December 2002, Plaintiff—while working as a Case Picker—reported back and hip pain resulting from lifting a box at work. Plaintiff pursued a workers' compensation claim for her injuries and was initially treated by Dr. Bergland, the company doctor. (Although "Dr. Bergland" is referred to frequently as "Dr. Berglund"—even in his own affidavit—for the sake of consistency, I refer to him only as "Dr. Bergland" herein). Dr. Bergland placed Plaintiff on modified duty with restrictions, including a ten pound lifting limit that was later reduced to a two pound limit. On January 14, 2003, Dr. Bergland found Plaintiff to be at maximum medical improvement and returned Plaintiff to full duty with no restrictions. Dr. Bergland concluded Plaintiff's injuries were not work related. Plaintiff reported a second injury in February 2003 and filed another workers' compensation claim. Plaintiff was again issued a ten pound lifting restriction by Dr. Bergland. As a result, Plaintiff was transferred to a position stamping cartons of cigarettes.

Plaintiff changed treatment providers from Dr. Bergland to Dr. Finn in May 2003. Dr. Finn opined that Plaintiff's injuries were work-related. Nonetheless, Dr. Finn did not issue any work restrictions for Plaintiff.

In January 2005, Plaintiff reapplied for her prior position as a Unit Picker. Defendant informed Plaintiff that she could not return to the Unit Picker position unless she had no work restrictions. Dr. Finn provided Plaintiff with a letter indicating he had not placed Plaintiff on work restrictions. Plaintiff was then returned to her prior job as a Unit Picker in February 2005.

As part of Plaintiff's ongoing workers' compensation case, a functional capacity examination ("FCE") was performed in February 2005. The FCE concluded Plaintiff was capable of performing light duty positions. The Unit Picker job is classified as a medium duty position.

In July 2005, Dr. Finn determined Plaintiff had a 24% whole person impairment as a result of her workplace injuries. In September 2005, Plaintiff entered into a settlement of her workers' compensation claims for $60,000. Defendant subsequently required Plaintiff to be evaluated to determine whether her permanent injuries would prevent her from being able to perform her duties as a Unit Picker.

Defendant sent Plaintiff's FCE and other records to Dr. Bergland—who was then acting as Defendant's occupational injury physician—for review. Dr. Bergland concluded that—based on the FCE's restriction to light duty and Plaintiff's other records—Plaintiff could not perform the medium duty job of Unit Picker without placing herself at risk for future re-injury. Defendant informed Plaintiff that—due to her impairments—she could not continue to perform the required duties of the Unit Picker position. Defendant then told Plaintiff she was entitled to

seek an additional medical evaluation to have the FCE limitations lifted, but Plaintiff declined to seek a reevaluation.

Having determined that Plaintiff could no longer remain in her position as a Unit Picker, Defendant spoke with union representatives to inquire whether there were other positions available that Plaintiff could perform. The union steward informed Defendant that there were no positions available to Plaintiff given her seniority and work restrictions. Plaintiff was then terminated.

Plaintiff filed a complaint on May 5, 2007, alleging two claims for relief: (1) termination in violation of the Americans with Disabilities Act ("ADA"); and (2) a Colorado state law claim for retaliation and termination in violation of public policy for terminating Plaintiff in retaliation for her filing a workers' compensation claim.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

4

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in this employment case, Plaintiff must show material facts in dispute by a preponderance of the evidence in order to defeat Defendant's motion for summary judgment. Plaintiff meets this burden if she sets forth evidence that—if believed by the ultimate factfinder—makes the question of Defendant's wrongdoing more likely than not.

# III. ADA CLAIM

Plaintiff alleges she was able to perform the essential functions of her job as a Unit Picker—which she had, in fact, been performing for several months prior to her termination. Plaintiff alleges Defendant mistakenly believed she had a physical disability, but made no effort to reasonably accommodate the perceived disability. Accordingly, Plaintiff alleges she was terminated due to her perceived disability, in violation of the ADA.

## A. Elements of Plaintiff's ADA Claim

To make out a *prima facie* case of discrimination under the ADA, Plaintiff must establish: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability." *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Once Plaintiff establishes her *prima facie* case, Defendant bears the burden of providing a legitimate, nondiscriminatory reason for the adverse employment decision. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir. 1999). If Defendant is able to articulate a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to show the justification to be pretextual. *See id.* at 748.

"The [ADA] defines disability as either (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities, 42 U.S.C. § 12102(2)(A); (2) a record of such an impairment, 42 U.S.C. § 12102(2)(B); or (3) being regarded as having such an impairment, 42 U.S.C. § 12102(2)(C)." *MacKenzie*, *supra*, 414 F.3d at 1275. Plaintiff alleges she is disabled under Section 12102(2)(C). Under Section 12102(2)(C), an individual is disabled if "(1) a covered entity mistakenly believes that [] person has a physical impairment that

substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1132–33 (10th Cir. 2003).

The focus of a "perceived disability" claim is on the employer's subjective state of mind and is limited to an analysis only of the of the major life activity impairment asserted by the plaintiff—in this case, working. *See Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1086 (10th Cir. 2008). Plaintiff must present evidence showing Defendant believed she was "significantly reduced in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *See E.E.O.C. v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006). "It is particularly difficult for a plaintiff to prevail on this type of claim, which takes a plaintiff to the farthest reach of the ADA. It is not, however, an insurmountable showing." *Justice*, 527 F.3d at 1086 (citations and internal formatting omitted).

## B. Summary Judgment Analysis

It is not disputed that Plaintiff does not have a substantially limiting impairment. Accordingly, in order for Plaintiff to meet the first prong of her *prima facie* case, she must point to evidence that shows a genuine issue of material fact whether Defendant nonetheless thought she had such an impairment. Plaintiff does not allege which class of jobs Defendant believed she was unable to perform, so my inquiry focuses on whether Plaintiff alleges sufficient facts to

show Defendant believed she was unable to perform a broad range of jobs in various classes. *See Justice*, *supra*, 527 F.3d at 1086–88; *see also Heartway Corp.*, *supra*, 466 F.3d at 1164, 1166–67 (discussing the intended meaning of the term "broad range of jobs").

Plaintiff alleges the following evidence—much of which is intertwined with evidence of pretext, *see Jones v. United Parcel Service, Inc.*, 502 F.3d 1176, 1188 (10th Cir. 2007)—as proof that Defendant thought she was substantially limited in her ability to perform the major life activity of working in a broad range of jobs: (1) as of October 7, 2005, there were at least two non-union inventory clerk positions that were open, but Defendant made no attempt to place Plaintiff in either position; (2) Operations Manager John Woods made contradictory statements in May 2006 and April 2008 regarding why Plaintiff was not placed in another position; (3) Defendant ignored statements from Dr. Finn indicating Plaintiff had no work restrictions; and (4) Defendant interfered with Dr. Bergland's review of Plaintiff's FCE and other records. Plaintiff points me to no evidence, however, genuinely substantiating these factual allegations or linking these allegations to a subjective belief on Defendant's part that Plaintiff was unable to perform a broad range of jobs. Instead, Plaintiff's evidence merely shows Defendant believed Plaintiff was unable to perform one specific job: Unit Picker. Accordingly, Plaintiff does not meet her burden. *See Justice*, *supra*, 527 F.3d at 1086–88; *McGeshick v. Principi*, 357 F.3d 1146, 1150–51 (10th Cir. 2004) (holding that when the evidence presented only shows an employer believed an employee was unable to perform one specific job, summary judgment for the employer is appropriate); *see also Phillips v. Calhoun*, 956 F.2d 949, 950 n.3 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings.").

As to the two non-union positions, while the positions may have been available in early October 2005, Plaintiff provides no evidence showing these positions were still open in late November 2005 when Dr. Bergland concluded that Plaintiff was unable to perform the Unit Picker job without risking re-injury. Plaintiff's allegation that she could have been placed in these positions, but was not, is therefore merely speculative. Even taken in the light most favorable to Plaintiff, such speculative evidence does not raise a genuine issue of fact for trial. *See Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007); *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1108 (3d Cir. 1985) ("a genuine issue means that the evidence must create fair doubt, and wholly speculative assertions will not suffice").

As to the allegedly contradictory statements made by Operations Manager John Woods in May 2006 and April 2008 regarding why Plaintiff was not placed in another position, Plaintiff does not provide a sufficient evidentiary basis from which to conclude the statements were, in fact, contradictory. Woods's May 2006 letter to the Colorado Civil Rights Division states: "no other positions were then open for which she could bid under the collective bargaining agreement." His April 2008 affidavit states: "The union steward and the union's business agent refused to waive seniority rules under the collective bargaining agreement, and there were no positions available to Ms. Baros given her seniority and her work restrictions." The fact that an employer does not use identical language in two statements made at differing times does not indicate a "*post hoc* embellishment" of the employer's rationale particularly where—as here—the substance of the language appears consistent. *See Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 773–74 (10th Cir. 2008) (holding no evidence of a *post hoc* justification existed where the employer did not give inconsistent reasons, but instead merely elaborated on

9

the initial justification for the termination); *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1215 (3d Cir. 1988) (finding no evidence of a *post hoc* justification when a later-dated rationale "was not substantially different" from previous ones); *Taylor v. County Bancshares, Inc.*, 325 F. Supp. 2d 755, 773–74 (E.D. Tex. 2004) (discussing cases).

As to whether Defendant ignored statements from Dr. Finn indicating Plaintiff had no work restrictions, it is not disputed that when Plaintiff was transferred to Dr. Finn's care in May 2003, she was already under the work restrictions initially issued by Dr. Bergland in April 2003. Although Dr. Finn did not issue any additional work restrictions, Dr. Finn's affidavit—as well as contemporaneous medical reports from Dr. Finn's office—states that he was aware of Dr. Bergland's prior restrictions. Plaintiff points me to no evidence showing Dr. Bergland's restrictions were lifted by Dr. Finn. To the contrary, Dr. Finn—as late as January 2005—noted Plaintiff was working with a ten pound lifting limitation and did not lift the restriction at that time. Accordingly, Plaintiff points me to no evidence showing Defendant "disregard[ed] [] the primary authorized treating physician's medical judgment regarding Ms. Baros' condition."

In examining Plaintiff's argument regarding whether Defendant interfered with Dr. Bergland's review of Plaintiff's FCE and other records, I initially note that "[w]here the recognition of Plaintiff's limitations is not an erroneous perception, but is instead a recognition of fact, a finding that Plaintiff was regarded as disabled is inappropriate." *See Lusk v. Ryder Integrated Logistics*, 238 F.3d 1237, 1241–42 (10th Cir. 2001). An employer's reliance on a medical provider's evaluation of an employee's ability to perform a certain job is evidence, therefore, that the resulting employment action "was not based on speculation, stereotype, or myth" associated with disabled persons. *See Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1163

10

(10th Cir. 2002). *But see Gallegos v. Swift & Co.*, 237 F.R.D. 633, 643 (D. Colo. 2006) (noting: "*Rakity* states only that an employer is not liable under this theory when it relies on a physician's accurate medical restrictions that by themselves do not constitute a substantial limitation."). Accordingly, actions taken in reliance on such opinions—as Defendant's actions were here—are presumptively not taken under the mistaken belief that a person is disabled. *See Lusk*, 238 F.3d at 1241–42. Plaintiff—acknowledging that an employer's actions taken in reliance on an accurate medical evaluation cannot form the basis for a "perceived disability" claim—alleges, however, that Defendant influenced Dr. Bergland's opinion and thereby rendered it inaccurate.

Plaintiff provides two reports from doctors who arguably disagreed with the medical opinions of Dr. Bergland regarding other employees in the Unit Picker position [**Docket ## 39-35, 39-36**]. Plaintiff does not, however, show how these opinions relate to her case. Plaintiff provides no evidence showing Dr. Bergland's opinions regarding Plaintiff were regarded as inaccurate by any other doctor. Moreover, to the extent Dr. Bergland's opinions regarding the other employees were considered inaccurate by other physicians, such differences of opinion are not uncommon and do not, standing alone, suggest improper influence. *Cf. Ingram v. Muskogee Reg'l Med. Ctr.*, 235 F.3d 550, 551–52 (10th Cir. 2000) (noting differences in medical opinions are common and do not necessarily raise an issue of material fact).

Further undermining Plaintiff's contention regarding Dr. Bergland's "history of doing whatever he was asked to do by Advantage" to "aid[] and abet[] Advantage in its efforts to terminate similarly situated employees," the evidence presented regarding one of the two other employees, Ms. Cozzolino, actually suggests the opposite conclusion of that for which it is proffered. Like Plaintiff, Cozzolino was found by Dr. Bergland to be unable to perform the Unit

Picker position due to work-related injuries. Rather than terminating Cozzolino, however, Defendant instead placed her in a light duty shipping clerk position. Accordingly, Plaintiff's evidence of "interference" again amounts to no more than mere speculation and does not raise a material question of fact whether Defendant attempted to influence Dr. Bergland in this case, or whether Defendant perceived Plaintiff to be unable to perform a broad class of jobs.

Finally, Plaintiff provides the expert report of Michael Fitzgibbons, a rehabilitation counselor. Fitzgibbons concludes: "In terminating her from her position, her employer implied Ms. Baros was unable to physically perform a wide range of additional classes of jobs available to her based on her training, knowledge, skills and abilities within her geographic area." [**Docket # 39-33, p**.10]. To the extent Fitzgibbons draws a legal conclusion regarding Plaintiff's perceived disability, his report and testimony are inadmissible for purposes of creating a genuine issue of fact. *See A.E. v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991). Even if such a conclusion could properly be cast as an expert "opinion" however, Fitzgibbons provides no factual support for his statement regarding Plaintiff's perceived disability and, accordingly, does not raise a material question of fact on this issue. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 843–44 (10th Cir. 1997) (discussing cases holding unsubstantiated conclusions in an expert report are insufficient to raise a genuine issue of material fact); *Buell v. Security Gen. Life Ins. Co.*, 987 F.2d 1467, 1472 n.3 (10th Cir. 1993) ("Even if an expert's testimony were to be admissible regarding the legal question of statutory violation, the testimony did not establish any material, factual issue here regarding defendant's conduct sufficient to preclude summary judgment.").

Accordingly, Plaintiff fails to raise a genuine issue of material fact whether Defendant subjectively believed she was "significantly reduced in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *E.E.O.C. v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006). Summary judgment on this issue is therefore appropriate.

### IV. TERMINATION IN VIOLATION OF PUBLIC POLICY

Having granted summary judgment in favor of Defendant on Plaintiff's ADA claim, I now turn to the proper disposition of her termination in violation of public policy claim—a claim which arises under Colorado state law. *See Jackson v. Dillard's Dept. Stores, Inc.*, 92 F. App'x 583, 588 (10th Cir. 2003); *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372–73 (Colo. Ct. App. 1992) (recognizing a claim for wrongful discharge based on an employee filing for workers' compensation); *see also Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108 (Colo. 1992) (citing *Lathrop* with approval). As this case was originally considered on federal question jurisdiction, the dismissal of Plaintiff's ADA claim extinguishes my jurisdiction and generally prevents me from reviewing the merits of the remaining pendent state law claim. *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1117 (10th Cir. 2006); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998). While I may retain pendent jurisdiction if the interests of judicial economy, convenience, and fairness to the parties so require, the preference for dismissal is particularly high where, as here, the federal claims are dismissed before trial. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Lancaster*, 149 F.3d at 1236; *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

Under the well-established doctrine of comity to the states, Colorado courts have a strong interest in enforcing their own laws. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 352 (1988). I find no compelling reason—taking into account the interests of judicial economy, convenience, and fairness to the litigants—why federal jurisdiction should be retained in this case. Accordingly, I dismiss Plaintiff's termination in violation of public policy claim without prejudice. *See Lancaster*, *supra*, 149 F.3d at 1236

## V. MOTION TO STRIKE AFFIDAVITS

In response to Defendant's Motion for Summary Judgment [**Docket # 36**], Plaintiff filed a Motion to Strike the Affidavits of Doctors Finn and Bergland Submitted in Defendant's Motion for Summary Judgment [**Docket # 46**]. As my order granting Defendant's motion for summary judgment as to Plaintiff's ADA claim does not rely on the objected-to portions of these affidavits—and as the remaining claim has now been dismissed without prejudice—Plaintiff's Motion to Strike the Affidavits of Doctors Finn and Bergland Submitted in Defendant's Motion for Summary Judgment [**Docket # 46**] is denied.

## VI. CONCLUSION

Plaintiff fails to show a genuine issue of fact whether Defendant terminated her employment in violation of the ADA. Accordingly, Defendant's Motion for Summary Judgment [**Docket # 35**] is GRANTED in part and DENIED in part as follows:

1. Plaintiff's first claim for relief—violation of the ADA—is DISMISSED WITH PREJUDICE;

2. Plaintiff's second claim for relief—retaliation and termination in violation of public policy—is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

Plaintiff's Motion to Strike the Affidavits of Doctors Finn and Bergland Submitted in Defendant's Motion for Summary Judgment [**Docket # 46**] is DENIED.

Dated: August   27  , 2008.

BY THE COURT:

       s/Lewis T. Babcock
Lewis T. Babcock, Judge